IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| KESHIA LANIER, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No. 3:16cv285-KKD |
| ) | (WO) |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**<u>RECOMMENDATION OF THE MAGISTRATE JUDGE</u>**

Before the court is petitioner Keshia Lanier's ("Lanier") *pro se* motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody. Doc. No. 1.[1]

## I.   INTRODUCTION

On March 5, 2015, Lanier pleaded guilty under a plea agreement to one count of wire fraud, in violation of 18 U.S.C. § 1343, and one count of aggravated identity theft, in violation of 18 U.S.C. § 1028A.[2] Doc. No. 12-3. The plea agreement contained an appeal/post-conviction waiver with exceptions for claims of ineffective assistance of counsel and prosecutorial misconduct. Doc. No. 12-3 at 7–8. Following a sentencing hearing on September 25, 2015, the district court sentenced Lanier to 180 months in prison,

---

[1] References to "Doc. No(s)." are to the document numbers of the pleadings, motions, and other materials in the court file, as compiled and designated on the docket sheet by the Clerk of Court. Unless otherwise noted, pinpoint citations are to the page of the electronically filed document in the court's CM/ECF filing system, which may not correspond to pagination on the "hard copy" of the document presented for filing.

[2] Lanier's convictions arose from her role in a massive tax refund scheme involving the filing of thousands of fraudulent tax returns using stolen identities.

consisting of 156 months on the wire fraud count and 24 months on the identity theft count, the terms to run consecutively.  Doc. No. 12-4; Doc. No. 12-5 at 2.  In addition, the court ordered Lanier to pay restitution in the amount of $5,811,406.  Doc. No. 12-5 at 5.

Lanier appealed, arguing that the district court erred in ordering restitution, failing to give her a downward departure for acceptance of responsibility, and finding that the number of victims of her criminal activity exceeded 250.  Doc. No. 12-7.  On March 31, 2016, the Eleventh Circuit dismissed Lanier's appeal based on the appeal waiver in her plea agreement.  Doc. No. 12-8.  Lanier did not seek certiorari review with the United States Supreme Court.

On April 14, 2106, Lanier filed this § 2255 motion asserting the following claims:

1. Her lawyers rendered ineffective assistance of counsel on appeal by failing to file a petition for writ of certiorari with the Supreme Court after she asked them to do so.

2. Her lawyers rendered ineffective assistance by failing to advise her of her right to file a petition for writ of certiorari with the Supreme Court.

3. Her lawyers rendered ineffective assistance at sentencing by failing to request a restitution hearing.

4. Her guilty plea was entered involuntarily and without an understanding of the nature of the charges and the consequences of the plea.

Doc. No. 1 at 4–5.

Lanier later amended her § 2255 motion to add a new claim for relief that her lawyers rendered infective assistance of counsel by failing to offer into evidence or provide to the U.S. Probation Officer her records from the mental health facilities she checked into after pleading guilty.  Doc. No. 23.

2

The government argues that all of Lanier's claims are without merit and should be rejected as grounds for relief. Doc. Nos. 12 & 29.

After considering the parties' submissions, the record, and the applicable law, the court finds that Lanier's § 2255 motion should be denied without an evidentiary hearing. Rule 8(a), *Rules Governing Section 2255 Proceedings in the United States District Courts*.

## II.   DISCUSSION

### A.   General Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments under 28 U.S.C. § 2255 are limited. A prisoner may have relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).

### B.   Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel is evaluated against the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). First, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id*. at

3

689. Second, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. *See Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable. *Chandler*, 218 F.3d at 1314 (internal quotation marks omitted). The court will "avoid second-guessing counsel's performance: It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Id*. (internal quotation marks and brackets omitted). "Given the strong presumption in favor of competence, the petitioner's burden of persuasion—though the presumption is not insurmountable—is a heavy one." *Id*.

As noted, under the prejudice component of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. The prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable. *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not

4

deprive the defendant of any substantive or procedural right to which the law entitles him." *Id*. at 372.

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied. *Strickland*, 466 U.S. at 687. Once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been. *Id*. at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

A criminal defendant's right to effective assistance of counsel continues through direct appeal. *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Ineffective assistance of appellate counsel may be shown if the movant can "establish … that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker[.] Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Mayo v. Henderson*, 13 F.3d 528, 533 (2nd Cir. 1994).

### 1.     *Failure to File Petition for Writ of Certiorari*

Lanier claims that her lawyers, Bruce S. Harvey and Kimberly Cornwell, rendered ineffective assistance of counsel on appeal by failing to file a petition for writ of certiorari with the United States Supreme Court after she asked them to do so.[3] Doc. No. 1 at 4; Doc. No. 16 at 2; Doc. No. 22 at 3–4.

Certiorari review by the Supreme Court is discretionary. *Ross v. Moffitt*, 417 U.S. 600, 617 (1974). Criminal defendants do not have a constitutional right to counsel to

---

[3] Harvey and Cornwell represented Lanier in her guilty plea proceedings, at sentencing, and on appeal to the Eleventh Circuit.

pursue discretionary review. *See Austin v. United States*, 513 U.S. 5, 8 (1994). Because a defendant does not have a constitutional right to counsel on discretionary appeals, *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987), counsel's performance cannot be deemed constitutionally deficient for a failure to petition the Supreme Court for certiorari review. *See Wainwright v. Torna*, 455 U.S. 586, 587–88 (1982); *see also Nichols v. United States*, 563 F.3d 240, 251 (6th Cir. 2009); *Steele v. United States*, 518 F.3d 986, 988 (8th Cir. 2008).

Here, Lanier has no legitimate claim under § 2255 based on her allegation that her counsel was ineffective for ignoring her request that they file a petition for writ of certiorari with the Supreme Court. *See Lynn*, 365 F.3d at 1232 (relief under § 2255 is reserved to correct errors of constitutional dimension, or fundamental errors which result in a complete miscarriage of justice). Consequently, Lanier is entitled to no relief on this claim.

### 2. *Failure to Advise of Right to File Petition for Writ of Certiorari*

Lanier also contends that Harvey and Cornwell rendered ineffective assistance of counsel on appeal by failing to advise her of her right to file a petition for writ of certiorari with the United States Supreme Court. Doc. No. 1 at 4; *see* Doc. No. 16 at 2–3.

In her previously discussed claim, Lanier alleges that she asked her lawyers to file a petition for writ of certiorari, but they failed to comply with her request. *See* Doc. No. 1 at 4; Doc. No. 16 at 2; Doc. No. 22 at 3–4. Even assuming this allegation is true, Lanier does not show how she was prejudiced by her lawyers' failure to advise her of her right to file a petition for writ of certiorari, since her purported request to counsel would suggest that she was aware of her right to pursue such review. Because of the vagueness of Lanier's

6

allegations, it is unclear whether she maintains she asked her lawyers to file a petition for writ of certiorari before or after expiration of the 90 days allowed under Supreme Court Rule 13. *See* Sup.Ct. R. 13.1.  As a result, it is not clear whether Lanier contends she only learned of her right to file a petition for writ of certiorari after the time to do so had run.[4] *See* Doc. No. 1 at 4; Doc. No. 16 at 2.

The Eleventh Circuit has not reached the issue of whether it is ineffective assistance of counsel for appellate counsel to fail to advise a defendant of her right to petition for certiorari with the Supreme Court.  *See Sessions v. United States*, 416 F. App'x 867, 869 (11th Cir. 2011) ("declin[ing] to address the hypothetical question of whether it might constitute ineffective assistance of counsel for an attorney to fail to advise a client of his right to file a petition for a writ of certiorari in violation of the Criminal Justice Act Plan where the client asserts that he would have filed such a petition if he had been informed"). There is considerable support for the proposition that because there is no constitutional right to counsel to pursue discretionary review in the Supreme Court, there can be no claim that appellate counsel's performance was ineffective where counsel fails to advise a defendant of the right to pursue such review. *See, e.g., United States v. Arechiga–Ramirez*, 370 F. App'x 784, 785 (9th Cir. 2010) (rejecting § 2255 claim of ineffective assistance of counsel based on failure to advise of right to petition Supreme Court for writ of certiorari); *Steele*, 518 F.3d at 988 (rejecting § 2255 claim of ineffective assistance of counsel based on alleged breach of the provisions of the 8th Circuit's Criminal Justice Act Plan where

---

[4] Affidavits submitted by Harvey and Cornwell are not dispositive on the question of when Lanier allegedly asked them to file a petition for writ of certiorari. *See* Doc. No. 8 at 1–2; Doc. No. 9 at 1–2.

counsel allegedly "failed to inform petitioner of the procedure and time limits for filing a certiorari petition pro se" finding "[w]e disagree that such violations would create a constitutional right to effective assistance of counsel"); *Pena v. United States*, 534 F.3d 92, 95–96 (2d Cir. 2008) (rejecting § 2255 claim of ineffective assistance of counsel based on failure of appellate counsel to notify petitioner of right to file for certiorari); *Moore v. Cockrell*, 313 F.3d 880, 882 (5th Cir. 2002) (rejecting § 2255 claim of ineffective assistance of counsel based on failure of counsel to timely notify petitioner of the outcome of his direct appeal which allegedly resulted in petitioner being time-barred from filing a discretionary appeal); *see also Coleman v. Thompson*, 501 U.S. 722, 752 (1991) (citing *Wainwright v. Torna* for the proposition that "when there is no constitutional right to counsel there can be no deprivation of effective assistance");

However, even if Lanier had a constitutional right to have counsel advise her of her opportunity to pursue discretionary review, Lanier's ineffective assistance claim would fail under the second prong of the *Strickland* test, because she has not shown prejudice. Lanier demonstrates no error in the Eleventh Circuit's judgment dismissing her appeal based on the waiver provision in her plea agreement. Nothing in the allegations in Lanier's § 2255 motion suggests that her case would have been selected by the Supreme Court for review or that the ultimate outcome of the proceedings would have been different. *See Steele*, 518 F.3d at 988–89 (requiring petitioner to demonstrate prejudice where counsel did not file petition for certiorari by showing she would have succeeded in obtaining a writ of certiorari and a reasonable probability she would have obtained relief on her sentence). Lanier has not met her burden under *Strickland* of showing that had she been advised of her right to

petition for certiorari and filed the petition, the outcome of the proceedings would have been different. Accordingly, Lanier's claim that her lawyers rendered ineffective assistance on appeal by failing to advise her of her right to petition for certiorari with the Supreme Court is due to be denied.

### 3.    *Failure to Request Restitution Hearing*

Lanier claims that Harvey and Cornwell were ineffective for failing to request a restitution hearing before sentencing. Doc. No. 1 at 5; *see also* Doc. No. 22 at 7–8.

In affidavits addressing this claim, Harvey and Cornwell aver that they did not request a restitution hearing because, prior to sentencing, the parties reached an agreement on the loss amount and restitution that was less than the loss amount and restitution recommended in Lanier's presentence investigation report ("PSI"). Doc. No. 8 at 3–4; Doc. No 9 at 5. Harvey and Cornwell further aver that they discussed this matter with Lanier, who agreed with the strategy of foregoing a restitution hearing, since the loss amount under the parties' agreement would reduce Lanier's guidelines range by 2 levels from what was recommended in the PSI. Doc. No. 8 at 3; Doc. No. 9 at 5. Even so, Lanier's counsel argued at sentencing that the district court was not authorized to order restitution because there was no jury determination on the issue. Doc. No. 12-4 at 35–37. This argument, however, was rejected by the district court. *Id.* at 37.

The PSI found that the loss amount attributable to Lanier was $21,351,616, which would have resulted in her receiving a 22-level specific offense characteristic enhancement under U.S.S.G. § 2B1.1(b)(1). *See* U.S.S.G. § 2B1.1(b)(1)(L), (M) (providing for 22-level enhancement where loss is more than $20,000,000 but less than $50,000,000); Doc. No.

9

12-9 at 19, ¶ 61. Under the parties' agreement, the loss amount attributed to Lanier was $15,543,288, which resulted in her receiving a 20-level enhancement under § 2B1.1(b)(1)—two levels lower than the PSI recommendation. *See* U.S.S.G. § 2B1.1(b)(1)(K), (L) (providing for 20-level enhancement where loss is more than $7,000,000 but less than $20,000,000). The PSI found that the IRS suffered a financial loss of $8,329,006 based on fraudulent refunds the IRS paid out as a result of Lanier's criminal conduct. Doc. No. 12-9 at 18, ¶ 55; *id*. at 28, ¶¶ 121–22. Under the parties' agreement, Lanier's restitution was set at $5,811,406 for the fraudulent refunds the IRS paid out. *See, e.g.*, Doc. No. 12-4 at 4.

Lanier's claim that her lawyers were ineffective for failing to request a restitution hearing is conclusory. Given that her lawyers reached an agreement with the government on loss amount and restitution that appears to have benefited her, Lanier does not show that her counsels' decision to forego a restitution hearing was professionally unreasonable. Moreover, Lanier fails to show how she was prejudiced by counsels' performance—as she neither demonstrates that the restitution amount in her case was improperly calculated nor identifies a plausible argument or evidence that her lawyers could have presented at a restitution hearing reasonably likely to change the district court's restitution determination. Lanier is entitled to no relief on this claim of ineffective assistance of counsel.

### 4. *Failure to Offer Records from Mental Health Facilities*

Lanier claims that her lawyers rendered infective assistance of counsel by failing to offer into evidence or provide to the U.S. Probation Officer her records from the mental health facilities she checked into after pleading guilty. Doc. No. 23. According to Lanier,

she was suffering from mental disability at the time of the court proceedings, "and in all probability, even during the commission of her offenses." *Id.* at 1. She also suggests that presentation of evidence about her mental health issues would have persuaded her probation officer and the district court that she could not have performed other than a minor role in the offenses for which she was convicted. *Id.* at 2.

Evidence pertinent to Lanier's claim reflects that, after she pleaded guilty and before she was sentenced, Lanier told her probation officer she had medical issues that would require her sentencing hearing to be postponed. Doc. No. 29-1 at 1–2. Lanier presented the probation officer with medical records purporting to show she was being treated for cancer at the John B. Amos Cancer Center. *Id.* at 2. Believing Lanier's claim to be true, her attorneys attached these records to a motion to continue her sentencing. Doc. Nos. 29-2, 29-3 & 29-4. After discovering discrepancies in the medical records submitted by Lanier, her probation officer showed the records to employees at the cancer center, who informed the probation officer that the documents were fraudulent. Doc. No. 29-1 at 2–3. Based on Lanier's submission of these fraudulent documents, the government moved on July 8, 2015, to revoke her bond. Doc. No. 28 at 3; Doc. No. 29-1.

Two days later, on July 10, 2015, Lanier checked into Riverwood Behavioral Hospital, a mental health facility, purporting to have suicidal thoughts. Doc. No. 28 at 4. Eight days after checking into the facility, Lanier was discharged from Riverwood. *Id.* Lanier failed to show up for a bond revocation hearing scheduled for July 21, 2015, and instead checked herself back into Riverwood. Doc. No. 28 at 4; Doc. No. 29-5 at 10. Lanier was moved to Lakewood Behavioral Health Center, a branch of Riverwood. Doc.

No. 28 at 4. On August 6, 2015, U.S. Marshals arrested Lanier and removed her from Lakewood. *Id*. at 4–5.

Following her arrest, Lanier's attorneys discussed her status with staff at Lakewood, who told them Lanier had checked into the facility under an assumed name and appeared to be there only to "avoid the legal system." *Id.* 4. Lanier's attorneys then hired Dr. Adrian Flores, an experienced psychologist, to examine Lanier. *Id*. at 5. Dr. Flores concluded that Lanier was competent and was "malingering regarding her statements that she was hearing voices." *Id*. She concluded that, by malingering, Lanier "was attempting to manipulate the judicial process." Doc. No. 27 at 3. She further concluded that "at worst [Lanier] suffered from depression but she was competent for the purposes of the legal proceedings." Doc. No. 28 at 5.

On August, 20, 2015, at a hearing on the government's motion to revoke Lanier's bond, the magistrate judge ordered that Lanier undergo an additional mental health evaluation. Doc. No. 28 at 5; Doc. No. 29-5 at 11. Lanier was evaluated by Dr. Guy Renfro. Doc. No. 29-6. In conducting his evaluation, Dr. Renfro considered many items, including Lanier's records from Lakewood. *Id.* at 2. In his report, Dr. Renfro found that Lanier was competent to assist her lawyers in court proceedings. *Id*. at 9. Dr. Renfro noted several instances in which Lanier was malingering and not putting forth a satisfactory effort. For instance, Dr. Renfro found that "when [Lanier] was asked specific questions during the mental-status examination part of the evaluation, she did not put forth satisfactory effort" and that "[t]his tendency to perform at less than optimal level was consistent throughout the mental status examination." *Id*. at 7.

12

In affidavits addressing Lanier's claim they were ineffective for failing to offer records from Lanier's treatment at mental health facilities, Harvey and Cornwell aver that in their multiple meetings with Lanier prior to her guilty plea, including several debriefings between Lanier and the government, Lanier never appeared to suffer from a mental illness. *See* Doc. No. 27 at 2, 4 & 7; Doc. No. 28 at 1–3. To the contrary, Lanier appeared to be competent, cognizant of the criminal proceedings against her, and capable of making decisions about her case. Doc. No. 27 at 2, 4 & 7; Doc. No. 28 at 1–3. Lanier only asserted alleged physical and mental issues after she pleaded guilty and her sentencing date approached. Doc. No. 27 at 2–3. Lanier's attorneys believed the findings of the mental health experts who examined her to be "clearly detrimental" to Lanier. *Id*. at 3.

The record demonstrates that Harvey and Cornwell made a reasonable decision not to focus on Lanier's mental health at sentencing and not to introduce her records from the mental health facilities where she received treatment. This decision was made after counsel conducted a reasonable investigation into Lanier's mental health issues. The mental health examinations by the experts who examined Lanier, one of whom was hired by Lanier's own lawyers, not only indicated that Lanier was competent, but that she was attempting to manipulate the legal process to her benefit. Had Lanier's attorneys focused on her mental health issues at sentencing, the district court would only have been presented with additional evidence that Lanier lied about her mental health in an attempt to obtain a better result for herself. Evidence that Lanier was trying to game the system before sentencing would not have supported an argument that Lanier was incapable of performing more than a minor role in the offenses for which she was convicted.

"Incompetency means 'suffering from a mental disease or defect rendering [a defendant] mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.'" *Battle v. United States*, 419 F.3d 1292, 1298 (11th Cir. 2005) (quoting 18 U.S.C. § 4241(a)). To show entitlement to an evidentiary hearing on a competency claim, a petitioner must present "clear and convincing evidence creating a real, substantial and legitimate doubt as to his competence to stand trial." *Johnson v. Singletary*, 162 F.3d 630, 637 (11th Cir. 1998) (quoting *Medina v. Singletary*, 59 F.3d 1095, 1106 (11th Cir. 1995)). "This standard of proof is high; and 'the facts must positively, unequivocally, and clearly generate the legitimate doubt.'" *Battle*, 419 F.3d at 1299 (quoting *Medina*, 59 F.3d at 1106). To actually prevail on such a claim, the petitioner must prove by a preponderance of the evidence that he was in fact incompetent to stand trial. *Johnston*, 162 F.3d at 637 n.7; *see also Battle*, 419 F.3d at 1298–99; *Medina,* 59 F.3d at 1106.

Lanier fails to present facts that positively, unequivocally, and clearly generate a legitimate doubt about her competency to assist in her defense, stand trial, or enter a valid guilty plea. Further, she has presented no facts to support her suggestion that she was mentally incompetent at the time of the offense.[5] Because Lanier does not show that her counsel's performance was deficient or that she was prejudiced by deficient performance, she is entitled to no relief on this claim of ineffective assistance of counsel.

---

[5] In order to prevail on a claim of mental incompetency at the time of the offense (i.e., a defense of insanity), a defendant is required to prove by clear and convincing evidence that "as a result of a severe mental disease of defect, [she] was unable to appreciate the nature and quality or the wrongfulness of his acts." *See* 18 U.S.C. § 17.

### 5.     *Voluntariness of Guilty Plea*

Lanier claims that her guilty plea was entered involuntarily and without an understanding of the nature of the charges and the consequences of the plea. Doc. No. 1 at 4. She presents few facts and little argument to support this claim, failing to explain in what way her guilty plea was unknowing and involuntary. The conclusory nature of her allegations forecloses the possibility of any relief. If, however, Lanier is claiming that her guilty plea was unknowing and involuntary because she was mentally incompetent to enter a valid guilty plea, such a claim lacks merit. As discussed above in this Recommendation, Lanier fails to present facts that generate a legitimate doubt about her competency.

The government argues that Lanier's claim should be dismissed based on the collateral attack waiver in her plea agreement and argues alternatively that if the claim is construed as a claim of ineffective assistance of counsel (and therefore excluded from the waiver), it should be dismissed as meritless. Doc. No. 12 at 8–11. The written plea agreement contained a waiver provision with this pertinent language:

> DEFENDANT'S WAIVER OF APPEAL AND COLLATERAL ATTACK
>
> Understanding that 18 U.S.C. § 3742 provides for appeal by a defendant of the sentence under certain circumstances, the Defendant expressly waives any and all rights conferred by 18 U.S.C. § 3742 to appeal the sentence. The Defendant further expressly waives the right to appeal the conviction and sentence on any other ground and waives the right to attack the conviction and sentence in any post-conviction proceeding. This waiver does not include the right to appeal on the ground of ineffective assistance of counsel or prosecutorial misconduct.

Doc. No. 12-2 at 7, ¶ 17. Under this provision, Lanier waived her rights to appeal or collaterally attack her conviction and sentence, except on grounds of ineffective assistance of counsel or prosecutorial misconduct.

An appeal waiver or collateral attack waiver is valid if a defendant enters it knowingly and voluntarily. *See Williams v. United States*, 396 F.3d 1340, 1341 (11th Cir. 2005); *United States v. Bushert,* 997 F.2d 1343, 1350–55 (11th Cir. 1993). In this circuit, such waivers have been enforced consistently according to their terms. *See United States v. Bascomb*, 451 F.3d 1292, 1294 (11th Cir. 2006) (collecting cases). To enforce such a waiver, the government must demonstrate either that (1) the court specifically questioned the defendant about the waiver during the change of plea colloquy, or (2) the record shows that the defendant otherwise understood the full significance of the waiver. *Bushert,* 997 F.2d at 1351.

Here, the magistrate judge who conducted the plea hearing specifically questioned Lanier about the waiver provision and confirmed that she understood its terms. Doc. No. 4-3 at 10. Thus, the record reflects—and Lanier does not disprove—that Lanier's collateral attack waiver was knowing and voluntary.[6] *Bushert,* 997 F.2d at 1351. Consequently, the undersigned agrees with the government that Lanier's claim that her guilty plea was not knowing and voluntary is barred from collateral review by the waiver provision in her plea agreement. Further, as already noted, the wholly conclusory nature of this claim by Lanier

---

[6] In Lanier's direct appeal, the Eleventh Circuit found the waiver provision was valid and enforceable because the magistrate judge had specifically questioned Lanier about her waiver during the plea colloquy and Lanier indicated that she understood she was waiving her right to appeal except in limited circumstances. Doc. No. 12-8 at 5.

forecloses § 2255 relief, and Lanier's assertion that she was incompetent to enter a valid guilty plea is meritless.

Finally, even if Lanier's claim is construed as a reviewable claim of ineffective assistance of counsel (a challenge within one of the waiver's exceptions), Lanier demonstrates no entitlement to relief. The *Strickland* standard for evaluating claims of ineffective assistance of counsel applies to guilty pleas. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985). A petitioner alleging ineffective assistance in this context must establish that counsel's performance was deficient (i.e., professionally unreasonable) and that counsel's deficient performance "affected the outcome of the plea process." *Hill*, 474 U.S. at 59. To establish prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would … have pleaded [not] guilty and would … have insisted on going to trial." *Id*.

Lanier stated under oath at the change of plea hearing that she and her lawyers had reviewed and discussed the plea agreement and that she understood its terms. Doc. No. 12-3 at 6. Lanier also affirmed that, other than the plea agreement, no one had made any promises to her to get her to plead guilty and the written plea agreement represented the entirety of any understanding she had with the government. *Id.* at 6–7. The magistrate judge advised Lanier of the statutory maximum sentence for the counts she was pleading guilty to, and the written plea agreement set forth this same information. *Id.* at 8; Doc. No. 12-2 at 2. Lanier affirmed to the court that she and her lawyers discussed how the advisory sentencing guidelines would apply in her case. Doc. No. 12-3 at 9. Lanier also acknowledged that she understood her sentence would be determined by a combination of

advisory guidelines, possible authorized departures from those guidelines, and other statutory factors—all of which could result in a sentence either lesser or greater than a sentence within the advisory guideline range. *Id*. In addition, Lanier affirmed to the court that she understood that the sentence ultimately imposed on her might differ from any estimate given to her by her lawyers. *Id.* Lanier was also informed of her right to a jury trial and her accompanying rights, and she affirmed that she was waiving those rights. *Id*. at 10–11. The magistrate judge went through the elements of Lanier's offenses and Lanier was questioned on the conduct to which she was pleading guilty. *Id*. at 12–20. Lanier then admitted her guilt in open court. *Id*. at 20.

"[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988). "There is a strong presumption that the statements made during the [guilty plea] colloquy are true." *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). The record does not support Lanier's contention that her guilty plea was entered involuntarily and without an understanding of the nature of the charges and the consequences of her plea. Lanier fails to meet her "heavy burden" to rebut her own sworn statements at her plea hearing and in her plea agreement. *See Medlock*, 12 F.3d at 187; *Rogers,* 848 F.2d at 168. Therefore, Lanier is not entitled to § 2255 relief on the claim that her lawyers rendered ineffective assistance of counsel.[7]

---

[7] If Lanier is claiming that her lawyers were ineffective for allowing her to plead guilty when she was mentally incompetent, such a claim lacks merit. As noted above, Lanier fails to present facts that generate a legitimate doubt about her competency to enter a valid guilty plea.

18

On May 8, 2018, Lanier filed a pleading styled as a supplement to her § 2255 motion, in which she asserts a claim that her counsel Harvey was ineffective, and operating under a "conflict of interest," by allowing her to plead guilty under a plea agreement that contained a collateral attack waiver. Doc. No. 44. Not only is such a claim by Lanier untimely asserted, and therefore time-barred under the federal limitation period in 28 U.S.C. § 2255(f),[8] but it lacks merit. Lanier's claim is predicated on the argument that an attorney acts under a conflict of interest when he advises and allows his client to enter a plea agreement that waives the client's right to later challenge the attorney's effectiveness.[9] Whether or not this particular argument has merit, the collateral attack waiver in Lanier's plea agreement included an exception allowing Lanier to assert claims of ineffective assistance of counsel in a collateral proceeding—which Lanier has done. Thus, Harvey did not advise and allow Lanier to enter a plea agreement waiving Lanier's right to challenge Harvey's (and Cornwell's) effectiveness via a § 2255 motion. Lanier is entitled to no relief on this newly asserted claim.

### III.   CONCLUSION

---

[8] As a general rule, a claim for relief under 28 U.S.C. § 2255 must be asserted in a motion filed within a year of the date on which the petitioner's judgment of conviction becomes final. See 28 U.S.C. § 2255(f)(1).

[9] Lanier cites to an October 2014 memorandum issued by then Attorney General Eric Holder directing federal prosecutors not to include or enforce collateral attack waivers in plea agreements waiving a defendant's right to bring future claims alleging ineffective assistance of counsel. Doc. No. 44 at 3–5; Doc. No. 16 at 4. The memorandum instructed prosecutors to decline to enforce such waivers "where defense counsel provided ineffective assistance resulting in prejudice or where the defendant's ineffective assistance claim raises a serious issue that a court should resolve." Doc. No. 16 at 4.

For the reasons set out above, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Lanier be DENIED and this case DISMISSED with prejudice.

It is further

ORDERED that the parties shall file any objections to this Recommendation or before July 20, 2018.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's findings and recommendations under the provisions of 28 U.S.C. § 636(b)(1) will bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1.  *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Done, on this the 6th day of July, 2018.

/s/ Susan Russ Walker  
Susan Russ Walker  
United States Magistrate Judge